**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HARLEYSVILLE PREFERRED INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>EAST COAST PAINTING & MAINTENANCE, LLC, et al.,<br><br>        Defendants. | Civil Action No: 16-8603-SDW-LDW<br><br>**OPINION**<br><br><br>August 12, 2019 |

**WIGENTON**, District Judge.

Before this Court are: 1) Harleysville Preferred Insurance Company's ("Plaintiff" or "Harleysville") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56; 2) Arch Specialty Insurance Company's Cross-Motion for Summary Judgment; 3) Admiral Insurance Company and Rukh Enterprises, Inc.'s Cross-Motion for Summary Judgment; and 4) Harleysville's Motion for Default Judgment against Defendants East Coast Painting and Maintenance, LLC ("East Coast") and Marcelo DeJesus ("DeJesus") pursuant to Rule 55. Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, Plaintiff's motion for summary judgment is **DENIED** and Defendants' cross-motions for summary judgment are **GRANTED**. Harleysville's motion for default judgment is **DENIED without prejudice**.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

On March 15, 2013, Long Island Rail Road ("LIRR") retained Rukh Enterprises, Inc. ("Rukh") as a general contractor on a bridge painting project in Queens, New York ("the Project"). (D.E. 77-1 Ex. B; D.E. 77-59 §II ¶¶ 1-2.)[1] Rukh then subcontracted with East Coast.[2] (D.E. 77-59 §II ¶ 3; 73-7 Ex. 5.) On or about September 13, 2013, DeJesus, an East Coast employee, was allegedly injured while working on the Project (the "Accident"). (*See generally* D.E. 73-7 Ex. 7, 8; 73-14 ¶ 2.) At the time he was injured, DeJesus was standing on a scissor lift mounted to the back of a truck owned by East Coast and being operated by another East Coast employee. (*See generally* D.E. 73-7 Ex. 7, 8, 9; 80-28 at 7 ¶ 7; 73-14 ¶ 5.) Details of the Accident were memorialized in reports dated September 13, 2013 and September 14, 2013, (D.E. 77-1 Ex. H-K), and the names of all employees present at the worksite on the day of the Accident were also recorded, (*id.* Ex. L). At the time of the Accident, East Coast was the named insured on a business auto policy issued by Harleysville for the policy period June 28, 2013 through June 28, 2014 (the "Policy"). (D.E. 73-2 Ex. 1.)[3]

On December 27, 2013, DeJesus filed a personal injury suit in the Supreme Court of New York, Queens County (Index. No. 706159/2013) (the "Underlying Action") against Rukh, LIRR,

---

[1] Citations to "D.E." refer to the docket entries for the parties' motion papers, including briefs, affidavits, declarations, and statements of undisputed facts, and the documents attached to and referenced therein.

[2] East Coast specifically contracted to: "Supply all manpower, labor, materials and disposals. Paint, paint supplies and safety equipment and any other facilities to complete the cleaning and painting operations with containment, for the completion of two bridges Myrtle and Cypress, as specified in the project." (D.E. 73-7 Ex. 5 at 6.) Rukh contracted to supply "[Project Management], safety supervision, ITA testing, and quality Manager for the [P]roject." (*Id.*)

[3] East Coast was also the named insured on a commercial general liability policy issued by Defendant Admiral Insurance Company ("Admiral") for the policy period July 6, 2013 through July 6, 2014 (the "Admiral Policy"). (D.E. 73-2 Ex. 2.) Rukh was insured under a commercial general liability policy issued by Defendant Arch Insurance Group ("Arch") for the policy period September 2, 2013 through September 2, 2014. (*Id.* Ex. 3.)

the New York City Transit Authority, the City of New York, and the Metropolitan Transit Authority. (D.E. 73-14 ¶ 6; 73-2 Ex. 7.) Rukh subsequently filed a Third-Party Complaint against East Coast seeking contractual indemnification and breach of contract, alleging that East Coast failed to provide primary liability insurance to Rukh "sufficient to cover Rukh's defense and exposure to [DeJesus's] claims . . . ." (D.E. 73-14 ¶ 7; 73-8 Ex. 12.) Harleysville did not receive notice of the Accident, the Underlying Action or the Third-Party Complaint until October 12, 2016. (D.E. 1 ¶ 20; 77-59 § II ¶ 60; 73-14 ¶ 8; 73-9 Ex. 14-16.) Once it was put on notice, Harleysville agreed to defend East Coast, subject to "a full reservation of rights, including . . . to initiate a declaratory judgment action to determine Harleysville's rights and obligations under its policy." (D.E. 73-9 Ex. 15, 18.)[4]

On November 17, 2016, Harleysville filed suit in this Court seeking a declaration that the Policy does not require it to indemnify or defend East Coast and/or Rukh in the Underlying Action. (D.E. 1 ¶ 1.) Harleysville later requested and was granted default against East Coast and DeJesus for failure to plead or otherwise defend. (D.E. 31, 32.) On March 29, 2019, Harleysville filed the instant motions for default judgment and summary judgment. (D.E. 72, 73.) Arch cross-moved for summary judgment on April 30, 2019 and Admiral & Rukh moved for summary judgment on May 3, 2019. (D.E. 77, 80.)

**II.    LEGAL STANDARD**

A.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[4] Before Harleysville agreed to defend East Coast, the State Court entered default judgment against East Coast on March 11, 2015. (D.E. 73-9 Ex. 13.) That judgment was vacated on consent of the parties on November 21, 2017 and East Coast answered on December 28, 2017. (D.E. 73-9 Ex. 21-22.)

56(a).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings.  *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325).  Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of

its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

B.

Federal Rule of Civil Procedure 55(a) permits the entry of default against a party who "has failed to plead or otherwise defend" claims against it. Fed. R. Civ. P. 55(a). After default is entered, the moving party "may [then] seek the Court's entry of default judgment under either Rule 55(b)(1) or Rule 55(b)(2)." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 1984). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, ... and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky,* 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)). "Once a party has defaulted, the consequence is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.,* Civ. No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011)

(internal citation omitted). When determining whether to enter a default judgment, the court must consider: "(1) the prejudice suffered by the party seeking default; (2) whether the party subject to default has a meritorious defense; and (3) the culpability of the party subject to default." *Super 8 Worldwide, Inc. v. Mahesh, Inc.*, Civ. No. 18-16336, 2019 WL 3244878, at *2 (D.N.J. July 19, 2019). "All doubts must be resolved in favor of proceeding on the merits." *Id.*

### III. DISCUSSION

#### A. Summary Judgment

The question before this Court is whether the terms of the Policy require Harleysville to indemnify or defend East Coast and/or Rukh in the Underlying Action. Harleysville contends that it is not obligated to do so because: (1) the Policy's "Operations" exclusion precludes coverage ("Operational Exclusion"), (D.E. 73-1 at 10-16); (2) East Coast breached the Policy's notice and cooperation provisions, (*id.* at 16-22); and (3) Rukh is not an insured under the Policy, (*id.* at 22-25).

##### 1. Operational Exclusion

"In considering the meaning of an insurance policy, [a court] interpret[s] the language 'according to its plain and ordinary meaning.'" *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010) (quoting *Vorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992)). Under New Jersey law, "when the 'terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written.'" *Travelodge Hotels, Inc. v. Elkins Motel Assocs., Inc.*, Civ. No. 03-799, 2005 WL 2656676, at *4 (D.N.J. Oct. 18, 2005) (citing *City of Orange Twp. v. Empire Mortg. Servs., Inc.*, 775 A.2d 174, 179 (N.J. Super. Ct. App. Div. 2001)). If, however, "the terms are not clear, but instead are ambiguous, they are construed against the insurer and in favor of the insured, in order to give effect to the insured's

6

reasonable expectations." *Flomerfelt*, 997 A.2d at 996; *see also Progressive Cas. Ins. Co. v. Hurley*, 765 A.2d 195, 201 (N.J. 2001) (instructing that "policies should be construed liberally in [the insured's] favor to the end that coverage is afforded to the full extent that any fair interpretation will allow") (internal citations omitted). Whether a contract is ambiguous is a question of law for the court and properly considered at summary judgment. *Travelodge*, 2005 WL 2656676 at *4; *see also Aerospace & Agric. Implement Corkers v. Mack Trucks, Inc.*, 917 F.2d 107, 111 (3d Cir. 1990); *J.I. Hass Co., Inc. v. Gilbane Bldg. Co.*, 881 F.2d 89 (3d Cir. 1989). "Exclusions are generally narrowly construed, and the burden is on the insurer to bring the claim within the exclusionary language." *Clemente v. N.J. Transit*, No. A-2355-12T3, 2015 WL 7047513, at *3 (N.J. Super. Ct. App. Div. Nov. 12, 2015).

The Operational Exclusion in the Policy bars coverage for "bodily injury . . . arising out of the operation of: a. [a]ny equipment listed in Paragraphs 6.b and 6.c of the definition of 'mobile equipment'." (D.E. 73-3 Ex. 1 at HPIC-P-0043.) Paragraph 6.b of the definition of "mobile equipment" includes: "[c]herry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers." (*Id.* at HPIC-P-0050.) Harleysville argues that the scissor lift upon which DeJesus was standing when he was injured is a device "similar" to a cherry picker, and, therefore, his claim is not covered under the Policy. (D.E. 73-1 at 10-16.)

This exact question was addressed in the New Jersey Superior Court Appellate Division's decision in *Clemente v. N.J. Transit*, which dealt with identical policy language in a wrongful death action brought after a construction worker was killed while standing on a platform scissor lift mounted on the back of a truck. No. A-2355-12T3, 2015 WL 7047513 at *1 (N.J. Super. Ct. App. Div. Nov. 12, 2015). In ruling against the insurer, the *Clemente* court held that a scissor lift is not "similar" to a cherry picker, noting that "the Occupational Safety and Health Administration

7

(OSHA) recognizes a distinction between" cherry pickers and scissor-lifts and "categorizes and regulates them differently." *Id.* at *4.[5] In rendering its decision, the *Clemente* court observed that "[h]ad the insurer intended to exclude the operation of all types of chassis mounted lifting devices from coverage under the auto policy it could easily have done so. Here, however, the exclusion is limited by its express terms to '[c]herry pickers and similar devices.'" *Clemente* at *4. This Court is persuaded by the analysis in *Clemente* and adopts it here. As a result, the Operational Exclusion does not preclude coverage for the claims brought in the Underlying Action.[6]

### 2. Notice and Cooperation

Harleysville next contends that it is not obligated to indemnify or defend East Coast or Rukh because East Coast breached the Policy's notice and cooperation provisions. (D.E. 73-1 at 16-22.) In order to assert a defense of late notice under New Jersey law, a carrier must show both "a breach of the notice provision and a likelihood of appreciable prejudice." *Grazis v. Miller*, 892 A.2d 1277, 1280 (N.J. 2006) (quoting *Cooper v. Gov't Employees Ins. Co.*, 237 A.2d 870 (N.J. 1968)). To determine whether an insurer has suffered appreciable prejudice, a court must examine: (1) "whether the insured's 'substantial rights have been irretrievably lost' by the insured's late notice," and (2) "the likelihood of the success of the insurer in defending the underlying claims

---

[5] The *Clemente* court also noted that testimony from one of the contractors involved in the bridge work distinguished between the two types of devices. 2015 WL 7047513 at *1. Here, the record indicates that multiple persons deposed considered the lift truck to be a scissor lift and did not describe it as a cherry picker. (*See* D.E. 77-1 Ex. D at 51; 77-24 Ex. D at 16, Ex G at 15.)

[6] Even in the absence of the *Clemente* decision, this Court would reach the same conclusion. The voluminous record evidences, at the very least, ambiguity regarding whether a scissor lift is "similar" to a cherry picker. The dictionary definition of "cherry picker" is "a traveling crane equipped for holding a passenger at the end of a boom." *See* https://www.merriam-webster.com/dictionary/cherry%20picker, last visited August 5, 2019. The record indicates that the scissor lift moves differently than a cherry picker and does not have a boom. (*See e.g.,* D.E. 80-1 Ex. S at 57; 77-23 Ex. B at 7.) Various witnesses described the scissor lift as a lift truck not a cherry picker. (*See* D.E. 77-1 Ex. D at 51; 77-24 Ex. D at 16, Ex. G at 15.) Because exclusionary provisions are to be "strongly construed against the insurer" and because this Court must resolve any ambiguity in favor of the insured, the Operational Exclusion does not preclude coverage in the Underlying Action.

8

lodged against the insured." *Travelers Cas. & Sur. Co. v. Becton Dickinson & Co.*, Civ. No. 14-4410, 2016 WL 3769747, at *4 (D.N.J. July 12, 2016). In conducting this analysis,

> a court should consider such factors as the availability of witnesses, the ability to discover information regarding the location of the accident, any physical changes in the scene during the delay, the existence of official reports concerning the occurrence, the preparation and preservation of demonstrative and illustrative evidence such as vehicles or photographs, and the ability of experts to reconstruct the scene

*Hermann Servs. Inc. v. Resurgens Specialty Underwriting, Inc.*, Civ. No. 8-1213, 2009 WL 2392910, at *4 (D.N.J. Aug. 3, 2009) (quoting *Morales v. Nat'l Grange Mut. Ins. Co.*, 423 A.2d 325, 329 (N.J. Super. Ct. Law Div. 1980)).

The Policy requires that the insured give Harleysville "prompt notice of" an accident, claim, suit or loss. (D.E. 73-3 Ex. 1 at HPIC-P-0046-47.) There is no question that Harleysville did not receive notice of the Accident or the Underlying Action until October 2016, three years after DeJesus was injured. (D.E. 1 ¶ 20; 77-59 § II ¶ 60; 73-14 ¶ 8; 73-9 Ex. 14-16.) This is not "prompt" notice, and, therefore, this Court must determine whether Harleysville was appreciably prejudiced by that delay.[7]

In the three years between the Accident and the time Harleysville was notified of the same, ownership of the lift truck changed, and the record suggests it was not properly maintained. (*See, e.g.*, D.E. 73-12 Ex. 32 at 42-43, Ex. 36 at 2-4, Ex. 43 at 3.) Thus, the lift truck was not in the same

---

[7] Harleysville also claims that East Coast breached the Policy's cooperation provision, which requires East Coast to "cooperate with [Harleysville] in the investigation or settlement of the claim or defense against the 'suit.'" (D.E. 73-1 at 17-18; 73-3 Ex. 1 at HPIC-P-0047.) Specifically, Harleysville argues that East Coast's owner, Anna O'Connor "brazenly disregarded her obligations to cooperate" by failing to inform Harleysville what happened to the lift truck after the Accident. (D.E. 73-1 at 18.) This Court is not persuaded that the record shows a "brazen" refusal to cooperate. Rather, Ms. O'Connor's deposition testimony indicates that once East Coast went out of business in 2013, the truck was sold, and she did not know where it was located and could not recall precisely when the sale took place. (*See* D.E. 73-9 Ex. 17 at 46; 73-11 Ex. 32 at 42-43; D.E. 80-1 Ex. X at 11-16, 24-25, 31-32.) While unfortunate, Ms. O'Connor's lack of knowledge does not equate to a breach of her obligations under the Policy.

9

condition it was at the time of the Accident. However, the loss of evidence alone does not constitute prejudice where other evidence exists with which an insurer can defend a claim. *See, e.g.*, *Transportes Ferreos De Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 561 (3d Cir. 2001); *Schneider Nat'l Carriers, Inc. v. Newport Distrib. Servs., Inc.*, Civ. No. 04-5468, 2007 WL 2509673, at *1, 4 (D.N.J. Aug. 30, 2007). Here, Harleysville has ample other evidence with which it can defend itself. Both sides have had experts inspect the lift truck and those experts have opined as to the likely cause of the Accident. (D.E. 77 Ex. 23; 73-12 Ex. 36.) Further, there are multiple contemporaneous accident reports, (D.E. 77-1 Ex. H-K), a list of the East Coast employees on site at the time, (*id.* Ex. L), photographs of the lift truck and its location when DeJesus was injured (D.E. 77-24 Ex. H, M; 73-7 Ex. 6), and depositions of DeJesus and others regarding the events at issue, (D.E. 80-1 Ex. G-K). There is no indication that necessary witnesses are not available to testify at trial. As a result, Harleysville has failed to show it has been appreciably prejudiced by the late notice.

### 3. Scope of Insureds

Harleysville finally argues that it is not required to indemnify or defend Rukh in the Underlying Action because Rukh is not an insured under the Policy. (D.E. 73-1 at 22-25.) The Policy defines an insured as:

> a. You [the named insured East Coast] for any covered "auto"
> b. Anyone else while using with your permission a covered "auto" you own, hire or borrow . . .
> c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

(D.E. 73-3 Ex. 1 at HPIC-P-0041-42.)

Subsection c specifically provides for the possibility that the Policy may extend coverage to others for East Coast's conduct. Here, the claims in the Underlying Action against Rukh include

allegations that, as the general contractor for the project, Rukh is vicariously liable for East Coast's actions. (*See* D.E. 73-7 Ex. 7 ¶ 16 (alleging that Rukh "was the general contractor" for the "work being performed"), ¶¶ 23, 25 (alleging that Rukh "owned" and "leased" the lift truck), ¶ 34 (alleging that Rukh "failed to properly maintain, repair and inspect the lift truck" and allowed "the lift truck to be used at the construction site" in unsafe conditions).) Specifically, the Underlying Action brings claims against Rukh for violations of N.Y. Labor Law §§ 200, 241(6), and 240.[8] (*Id.* ¶ 34.) Section 241 "imposes a nondelegable duty on owners, contractors, and their agents to provide a safe workplace to workers." *Torres v. City of New York*, 7 N.Y.S. 3d 539, 542 (2d Dep't 2015); *see also Rizzuto v. L.A. Wenger Contracting Co.*, 693 N.E.2d 1068, 1070 (N.Y. 1998) (noting that § 241(6) "by its very terms, imposes a non-delegable duty of reasonable care upon owners and contractors 'to provide reasonable and adequate protection and safety' to persons employed in, or lawfully frequenting, all areas in which construction, excavation or demolition

---

[8] Section 200 provides in relevant part that "[a]ll places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons." N.Y. Lab. Law § 200 (McKinney 2019).

Section 240 provides in relevant part that "[a]ll contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed." N.Y. Lab. Law § 240 (McKinney 2019).

Section 241(6) requires that "[a]ll contractors and owners and their agents . . . shall . . . comply with the following requirements . . . 6. All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places." N.Y. Lab. Law § 241 (McKinney 2019).

work is being performed") (internal citation omitted); *Allen v Cloutier Constr. Corp.*, 376 N.E.2d 1276, 1279 (N.Y. 1978) (holding that under §241(6), a general contractor has "absolute" responsibility for the safety of a workplace "irrespective of their control or supervision of the construction site"). Similarly, a general contractor has a non-delegable duty under Section 240 and "may be held liable in damages regardless of whether it has actually exercised supervision or control over the work." *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 681 N.E.2d 82, 85 (N.Y. 1993); *see also Fernandez v. CMB Contracting*, 487 F. Supp. 2d 281, 286 (E.D.N.Y. 2007) (holding that § 240(1)'s duty "is non-delegable and all contractors and non-excluded owners will be held liable whether or not they exercise supervision or control over the plaintiff's work").

Under these statutes, Rukh faces liability not only for its own conduct, but for liability predicated on East Coast's conduct. Therefore, Rukh qualifies as an insured under the Policy to the extent of East Coast's liability. *See Empls. Ins. Co. of Wausau v. Harleysville Preferred Ins. Co.*, Civ. No. 15-4175, 2016 WL 815277, at *10 (S.D.N.Y. 2016), *aff'd in part, vacated in part, rev'd in part*, 726 Fed. App'x 56 (2d Cir. 2018).

B. Default Judgment

In addition to its motion for summary judgment, Harleysville has also moved for default judgment against East Coast and DeJesus, arguing that default judgement is appropriate "[f]or the same reasons that Harleysville is entitled to summary judgment." (D.E. 72-1 at 1, 3.) Having denied Harleysville's motion for summary judgment, it follows that Harleysville is not entitled to entry of default judgment at this time. The entry of a judgment against East Coast declaring that Harleysville owes it no duty to defend or indemnify is in direct contradiction of this Court's ruling that Harleysville, in fact, does owe such a duty. Because default judgment may not be entered where doing so would lead to inconsistent rulings, Harleysville's motion is denied without

prejudice.  *See, e.g.*, *Colony Nat'l Ins. Co. v. Control Bldg. Serv., Inc.*, Civ. No. 14-5651, 2015 WL 7296034, at *7-8 (D.N.J. Nov. 18, 2015).

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **DENIED**. Defendants' Motions for Summary Judgment are **GRANTED**.  Plaintiff's Motion for Default Judgment is **DENIED without prejudice**.[9]  An appropriate order follows.

           ___/s/ Susan D. Wigenton_____
           **SUSAN D. WIGENTON, U.S.D.J.**


Orig: Clerk
cc:  Leda D. Wettre, U.S.M.J.
    Parties

---

[9] Arch also informally requests, but has not formally moved for, an award of attorneys' fees and costs. (D.E. 77-58 at 5.)  This Court finds no reason to deviate from the long-standing "American Rule" that prevailing litigants are generally not entitled to collect fees and costs from the loser.  *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975); *Murphy v. Hous. Auth. & Urban Redev. Agency of City of Atl. City*, 158 F. Supp. 2d 438, 443 (D.N.J. 2001).